UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | | |
|---|---|---|
| KAYLEE DEDRICK | ) | Civil Action No. 12 CV 7165 (WHP) |
| | | |
| Plaintiff, | ) | **COMPLAINT** |
| | | |
| -against- | ) | |
| | | **JURY TRIAL DEMANDED** |
| THE CITY OF NEW YORK, NYPD DEPUTY | ) | |
| INSPECTOR ANTHONY BOLOGNA, NYPD | | |
| DETECTIVE BENJAMIN BELLINGERI, | ) | ECF Case |
| and POLICE OFFICER JOHN DOE, | | |
| | ) | |
| Defendants. | | |

-----------------------------------------------------------------x

Plaintiff KAYLEE DEDRICK, by her attorneys, the Law Office of Ronald L. Kuby,

hereby brings this action under 42 U.S.C. § 1983 to redress her civil and legal rights, and alleges

as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiff, KAYLEE DEDRICK, seeks

relief for the defendants' violations of her rights secured by the Civil Rights Act of 1871, 42

U.S.C. § 1983, by the United States Constitution, including its First, Fourth and Fourteenth

Amendments, and by the laws and Constitution of the State of New York.  Plaintiff seeks

compensatory and punitive damages, an award of costs, interest and attorney's fees, and such

other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First,

Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred

upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiffs' constitutional and civil rights.

3.    Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

4.    Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant CITY OF NEW YORK is administratively located within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## JURY TRIAL DEMANDED

5.    Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## PARTIES

6.    At all times relevant to this action, Plaintiff KAYLEE DEDRICK was a resident of Kings County, New York. She is currently a resident of Rensselaer County, New York.

7.    Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant

2

CITY OF NEW YORK was at all times relevant herein the public employer of Defendants

Deputy Inspector ANTHONY BOLOGNA, NYPD Detective BENJAMIN BELLINGERI, and

Police Officer JOHN DOE.

8.      Defendants BOLOGNA, BELLINGERI, and DOE are and were at all times

relevant herein duly appointed and acting officers, servants, employees and agents of the New

York City Police Department, a municipal agency of Defendant CITY OF NEW YORK.  At all

times relevant herein, the individual defendants were acting under color of the laws, statutes,

ordinances, regulations, policies, customs and/or usages of the State of New York and the New

York City Police Department, in the course and scope of their duties and functions as officers,

agents, servants, and employees of Defendant CITY OF NEW YORK, were acting for, and on

behalf of, and with the power and authority vested in them by the CITY OF NEW YORK and the

New York City Police Department, and were otherwise performing and engaging in conduct

incidental to the performance of their lawful functions in the course of their duties.  They are

sued individually and in their official capacity.

9.      By the conduct, acts, and omissions complained of herein, Defendants

BOLOGNA, BELLINGERI, and DOE violated clearly established constitutional standards under

the First, Fourth, and Fourteenth Amendments to the United States Constitution of which a

reasonable police officer under the circumstances would have known.

## NOTICE OF CLAIM

10.     Plaintiff timely filed a Notice of Claim with the Comptroller of the City of New York,

setting forth the facts underlying Plaintiff's claim against DEPUTY INSPECTOR ANTHONY

BOLOGNA and Defendant CITY OF NEW YORK.

3

11.     The City assigned a claim number to Plaintiff's claim, and Plaintiff was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on August 29, 2012.

12.     To date, no answer has been received by Plaintiff and no compensation has been offered by Defendant CITY OF NEW YORK in response to this claim.

13.     This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

## STATEMENT OF FACTS

14.     On the afternoon of September 24, 2011, Kaylee Dedrick became one of the victims of the spray felt 'round the world when NYPD Deputy Inspector Anthony Bologna, without warning or justification, discharged pepper spray directly into the face of the 24 year-old teacher's assistant and other Occupy Wall Street protesters who were standing peacefully on the sidewalk of East 12th Street near University Place.

15.     The pepper spray attack was captured on video by protesters and others present at the scene.  Many of those videos were posted on social media websites, and have since been viewed by over 1.5 million people.  A disc of exhibits containing such footage is enclosed herewith, and provides both real-time and slow motion videos of the attack and the moments leading up to it.

16.     The NYPD's Technical Assistance Response Unit (TARU) also had a number of officers videotaping the September 24, 2011 demonstration, including Defendant Detective BENJAMIN BELLINGERI.  Video footage recorded by Detective BELLINGERI – who had the equivalent of an all-access pass to the exhibition of police brutality on September 24 – presents a

4

unique, close-up view of BOLOGNA's unprovoked pepper spray assault, and is included on the enclosed disc as Exhibit F.

17.    The Occupy Wall Street movement, which began in New York City and has spread around the world, was in its infancy on September 24, 2011. Through demonstrations in New York City and other major cities, members of the movement have sparked political discussion of a myriad of issues including corporate greed, economic injustice, and the eroding middle class. The now-global Occupy movement captured the attention of major media outlets and viewers around the world after police officers began violently attacking and falsely arresting innocent protesters engaged in otherwise peaceful demonstrations. Amateur videos documenting the acts of police brutality were posted on various websites, and quickly went viral. Videos of the pepper spray attack are among them.

18.    In the late morning of September 24, 2011, Kaylee Dedrick and other demonstrators associated with the Occupy Wall Street movement assembled in Zucotti Park and marched to Union Square with a plan to peacefully protest against social and economic injustice.

19.    Upon information and belief, scores of NYPD police officers were deployed to the Union Square area equipped with orange netting, batons, and pepper spray.

20.    Minutes after arriving at Union Square Park, Ms. Dedrick learned that another organization had already scheduled to use the park for an event that afternoon. She and several other protesters decided to return to Zuccotti Park.

21.    Ms. Dedrick left Union Square Park at around 2:00 p.m., and proceeded in the direction of Zuccotti Park, joining a small group of protesters who began to walk south on University Place.

22.     Efforts to exit the Union Square area were frustrated by members of the NYPD, who began erecting large mesh fences to block-off roads and arresting people in the street. Ms. Dedrick was forced to turn west onto 12th Street, where police officers were corralling people with the orange nets.

23.     On 12th Street, west of University Place, police officers unfurled the netting to encircle a group of people, including Ms. Dedrick, on the northern sidewalk. The officers formed a barricade near the intersection of 12th Street and University, preventing egress from 12th Street to the East. They continued to unfurl the orange netting from East to West, forming a fence that lined the northern sidewalk of 12th Street. Finally, the officers extended the mesh barrier from the curb of the sidewalk to the building behind it, blocking passage east.

24.     Ms. Dedrick turned her head to see she was trapped on the sidewalk of 12th Street, completely surrounded by the orange netting, unable to move in any direction.

25.     Ms. Dedrick was standing peacefully on the sidewalk, inside the orange netting, as she observed police officers violently throw a young man to the pavement and arrest him in the street. Ms. Dedrick and the young women standing beside her reacted to the brutality, screaming, "what are you doing," "stop it," and "oh my god."

26.     These cries of consternation can be heard on the video enclosed as Exhibit A. Kaylee Dedrick is the tall, young woman with dark hair who is wearing a gray tank-top and plaid skirt, standing on the sidewalk surrounded by orange netting. The video shows Ms. Dedrick with her arm in the air and two fingers raised in a V formation – the gesture widely recognized as a peace sign. She lowers her arm in disbelief as she observes the police officers assaulting a man in the street, and she can be heard verbally protesting the officers' conduct.

6

27.    Exhibit B is a video taken from a different angle, which shows Deputy Inspector BOLOGNA and Police Officer JOHN DOE retaliating against Ms. Dedrick and the three young women for engaging in protected First Amendment conduct. JOHN DOE is the uniformed officer in a white shirt who can be seen standing next to BOLOGNA as the young women cry out in protest and fear.

28.    As shown in exhibit B, BOLOGNA and DOE reacted to the cries, in unison, by charging toward the group of women. With an outstretched arm, DOE pointed at the women and yelled, "You guys all got to go." Acting in concert, Deputy Inspector BOLOGNA unhooked his can of pepper spray, lunged toward the group, and, without warning or justification, sprayed the irritant directly into the crowd of women.

29.    Exhibit C shows the attack from the view of an onlooker who was standing outside the orange netting barricade, looking in at the group of women. As shown on the video, BOLOGNA's actions were unprovoked. The video shows Deputy Inspector BOLOGNA discharging pepper spray in an arcing sweep at Ms. Dedrick and several other young women who are behaving peacefully and are entrapped by police netting.

30.    Exhibits D and E show the attack in slow motion. As can be seen in the videos, Deputy Inspector BOLOGNA discharged the pepper spray in two bursts, from a distance of less than two feet from Ms. Dedrick's face.

31.    The chemical went directly into the eyes of Ms. Dedrick, who was standing in the direct line of the stream, immediately causing her excruciating pain and discomfort.

32.    Ms. Dedrick collapsed to her knees, screaming in agony. The pepper spray seared her eyes, temporarily blinding her, and it burned the skin on her face and chest, causing

7

her to feel as if she was on fire. The spray infiltrated her air passage, making it difficult for her to breathe. She choked and gasped for air in between screams for help.

33.    Upon information and belief, Deputy Inspector BOLOGNA did not seek to obtain medical attention for Ms. Dedrick or any of the other victims of his assault. Upon information and belief, BOLOGNA failed to request that Emergency Medical Service (EMS) respond to the scene and did not, in any way, seek to assist the incapacitated women. As shown in the videos, BOLOGNA simply re-holstered his can of pepper spray, and walked away.

34.    Deputy Inspector BOLOGNA and Police Officer JOHN DOE were acting in concert when they approached and attacked Ms. Dedrick and the group of young women. At all times relevant to this complaint, Deputy Inspector BOLOGNA and Police Officer JOHN DOE were engaged in a joint venture, assisting each other in performing the actions described herein and lending their physical presence and support and the authority of their offices to one another.

35.    Despite his involvement in the attack, Police Officer DOE also failed to provide or request medical attention for Ms. Dedrick and the other victims of the pepper spray attack.

36.    As evinced by Exhibit F, the video recorded by Detective BELLINGERI, Defendant BELLINGERI witnessed the pepper spray attack and was aware that Ms. Dedrick, and others, had been hit by the spray at close range. BELLINGERI saw the victims of the attack on the ground waving and screaming for help, and was aware that the women were experiencing extreme pain. Nevertheless, Detective BELLINGERI failed to offer assistance to Ms. Dedrick and the other victims, and failed to obtain medical attention for the women.

37.     Upon information and belief, onlookers who witnessed the attack specifically requested that the officers at the scene call for medical attention for the victims of the assault. Those requests, too, were ignored.

38.     Eventually, a civilian medic arrived at the scene, and provided emergency medical assistance to Ms. Dedrick.  Upon information and belief, the medic poured a solution of water and Maalox into her eyes to alleviate the burning.  The burning lessened, but the pepper spray impaired Ms. Dedrick's vision for an extended period of time.

39.     Ms. Dedrick went to the Emergency Room of Beth Israel Medical Center the following day, and was prescribed Proventil to be taken through an inhaler.

40.     Despite the medical treatment, Ms. Dedrick continued to experience trouble breathing, shortness of breath, throat discomfort, and burning to her face and chest for several days after the assault.

41.     At no time during the course of the incident did Ms. Dedrick pose a threat to the safety of Defendants or the public.  Ms. Dedrick was not engaging in any criminal activity, she was not arrested, nor was she charged with a crime in connection with the events of September 24, 2011.

42.     The conduct of the defendant officers, in detaining Ms. Dedrick and using force against her, was totally without probable cause, was excessive, and was done maliciously, falsely and in bad faith.

43.     As a result of the events alleged herein, Ms. Dedrick was discouraged from participating in the Occupy Wall Street movement, and her involvement in OWS activities decreased after the attack.

44.     As a result of the events alleged herein, and due directly to the actions taken by the individual defendants, Kaylee Dedrick suffered and continues to suffer physical pain, emotional trauma, discomfort, humiliation, fear, anxiety and embarrassment, among other things.

## CAUSES OF ACTION

## FIRST CLAIM:  EXCESSIVE FORCE

## DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

45.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

46.     The conduct and actions of Defendants ANTHONY BOLOGNA and JOHN DOE, acting in concert and under color of law, in authorizing, directing and/or causing pepper spray to be sprayed into the face of Kaylee Dedrick, was excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable seizure of her person and the right to be free from the use of excessive, unreasonable, and unjustified force.

47.     As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of her liberty, and was otherwise damaged and injured.

## SECOND CLAIM:  DENIAL OF MEDICAL CARE

## DEPRIVATION OF RIGHTS UNDER THE FOURTEENTH AMENDMENT
## AND 42 U.S.C. §1983

48.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

49.    Members of the NYPD have an affirmative duty to seek medical attention persons who are injured in the course of being apprehended by the police.

50.    Defendants JOHN DOE and Detective BELLINGERI were in the immediate vicinity of Ms. Dedrick when Deputy Inspector BOLOGNA discharged pepper spray into her face, DOE, BELLINGERI, and BOLOGNA were aware that Ms. Dedrick had been hit by the spray at close range, and were aware that Ms. Dedrick was experiencing extreme physical pain as a result of BOLOGNA's use of excessive and unnecessary force, but took no action to provide or request medical care for Ms. Dedrick, disregarding the obvious risk to Plaintiff's health.

51.    The conduct and actions of Defendants BELLINGERI, BOLOGNA and DOE, acting under color of law, in failing to request or obtain medical attention for Kaylee Dedrick, was unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for Plaintiff's serious medical needs, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's substantive due process rights as guaranteed under 42 U.S.C. §1983, and the Fourteenth Amendment to the United States Constitution.

52.    As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

## THIRD CLAIM:  DEPRIVATION OF FREE SPEECH AND EXPRESSION

## DEPRIVATION OF RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

53.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

54.     The above described conduct and actions of the individual defendants, acting under color of law, deprived Plaintiff of her rights to free expression and association, was done due to Defendants' personal animus and bias against the content of Plaintiff's speech, and in retaliation against Plaintiff's exercise of her constitutionally protected speech; was done to interfere with, and chill, the exercise of free speech and association, and was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious pain and suffering in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983, and the First and Fourteenth Amendments to the United States Constitution.

55.     As a result of the foregoing, Plaintiff suffered the injuries and damages set forth above.

## FOURTH CLAIM:  MUNICIPAL LIABILITY FOR CONSTITUTIONAL VIOLATIONS

## *MONELL* CLAIM AGAINST THE CITY OF NEW YORK - 42 U.S.C. §1983

56.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

57.     The CITY OF NEW YORK directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant

12

officers. The conduct of the defendant officers was a direct consequence of policies and practices of Defendant CITY OF NEW YORK.

58.    At all times relevant to this complaint Defendant CITY OF NEW YORK, acting through the NYPD, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

59.    The September 24, 2011 march to Union Square Park was part of the Occupy Wall Street movement.  The events of September 24, 2011 were among the first of many OWS demonstrations in which activists marching in support of the movement would become the victims of police brutality.

60.    At all times relevant to this complaint, Defendant CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  Upon information and belief, Defendant CITY OF NEW YORK planned and implemented a policy, practice, custom and usage of controlling the OWS protests, that was designed to and did preempt lawful activities by illegally detaining persons engaged in protected First Amendment activity, using excessive force against persons engaged in protected First Amendment activity, retaliating against witnesses to police misconduct, and discouraging police officers from reporting the misconduct of other officers. In connection with the OWS demonstrations, The CITY OF NEW YORK consciously disregarded the illegality and unconstitutionality of said detentions, use of force, and retaliation in order to punish and suppress peaceful expression and association with the OWS movement.  These policies, practices, customs,

and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

61.    The existence these unconstitutional customs and policies, specifically as it relates to the Occupy Wall Street movement, is evidenced by the countless repeated occurrences of similar wrongful conduct documented at OWS demonstrations in the City over the past year.[1]

62.    The CITY OF NEW YORK knew or should have known of the defendant officers' propensity to engage in misconduct of the type alleged herein. Upon information and belief, prior to September 24, 2011, the CITY OF NEW YORK was aware of several complaints of police misconduct involving the use of excessive force and retaliatory use of force against Occupy Wall Street protesters by members of the NYPD. Despite its knowledge of such incidents of prior misconduct, the CITY OF NEW YORK failed to take remedial action.

63.    Additionally, the CITY OF NEW YORK knew or should have known, more specifically of Defendant BOLOGNA's propensity to engage in misconduct of the type alleged herein. Upon information and belief, prior to September 24, 2011, the CITY OF NEW YORK was aware of numerous claims of constitutional violations involving Deputy Inspector ANTHONY BOLOGNA, as documented in the following civil rights actions filed against the CITY and Deputy Inspector BOLOGNA:

   a. Bessendorf v. City of New York, 09-cv-9885 (S.D.N.Y.) (alleging that while plaintiff was engaging in protected First Amendment activity by holding a sign near location of a police concert, Bologna confiscated the sign, used excessive force against the plaintiff, and directed his arrest without probable cause);

---

1 By December 31, 2011 – just over three months from the inception of the Occupy movement – the Civilian Complaint Review Board had received 37 complaints, involving 41 police officers and 78 alleged victims, related to incidents that occurred at OWS demonstrations within the CCRB's jurisdiction. In addition, the CCRB received approximately 850 messages from concerned citizens who had seen videos of the police brutality on the internet or television. New York City CCRB Status Report, January – December 2011, at pg. 4.

b. <u>Posr v. Camejo</u>, 07-cv-07583 (KPC) (S.D.N.Y.) (alleging that Bologna ordered wrongful arrest of plaintiff engaged in protected First Amendment activity);

c. <u>Sloan v. City of New York</u>, 05-cv-7668 (RJS) (S.D.N.Y.) (alleging that Bologna directed wrongful mass arrest of plaintiffs engaged in protected First Amendment activity during Republican National Convention);

d. <u>Black v. City of New York</u>, 05-cv-03616 (RJS) (S.D.N.Y.) (same);

e. <u>Greenwald v. City of New York</u>, 05-cv-01566 (RJS) (S.D.N.Y.) (alleging that Bologna executed wrongful mass arrest of plaintiffs engaged in protected First Amendment activity during RNC);

f. <u>Kalra v. City of New York</u>, 05-cv-01563 (RJS) (S.D.N.Y.) (same);

g. <u>Hershey-Wilson v. City of New York</u>, 05-cv-07026 (RJS) (S.D.N.Y.) (alleging false arrest, excessive force, and malicious prosecution against Bologna and other officers, where plaintiff was arrested while engaging in protected First Amendment activity during RNC);

h. <u>Cohen v. City of New York</u>, 05-cv-06780 (RJS) (S.D.N.Y.) (civil rights case filed by legal observer arrested during Critical Mass bicycle event, alleging that Bologna and other officers punished her for engaging in protected activity by falsely arresting her and using excessive force against her); and

i. <u>Burley v. City of New York</u>, 03-cv-00735 (WHP) (S.D.N.Y.) (alleging that Bologna ordered unlawful mass arrest of demonstrators engaged in protected First Amendment activity during World Economic Forum).

64.     Despite its knowledge of such incidents of prior misconduct, the CITY OF NEW YORK failed to take remedial action.

65.     It was the policy and/or custom of the CITY OF NEW YORK to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the CITY OF NEW YORK, including, but not limited to, the incidents listed above. For example, upon information and belief, despite the numerous complaints of misconduct that were filed against BOLOGNA during, and prior to 2005, Bologna received a promotion and a pay increase

on May 30, 2005, obtaining the rank of Commanding Officer of the First Precinct.[2]

66.     It was the policy and/or custom of the CITY OF NEW YORK to inadequately train, supervise and discipline its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

67.     As a result of the above described policies and customs, police officers of the CITY OF NEW YORK, including the defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

68.     The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the CITY OF NEW YORK to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of Plaintiffs' rights alleged herein.

## FIFTH CLAIM:  ASSAULT AND BATTERY

## COMMON LAW CLAIM

69.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

70.     By the conduct and actions described above, Defendant ANTHONY BOLOGNA inflicted the torts of assault and battery upon Plaintiff.  The acts and conduct of Defendant

---

2 Albert Amateau, *After Years Of Trouble-shooting, He Gets A Precinct*, The Villager, June 28 –

BOLOGNA were the direct and proximate cause of injury and damage to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

71.    Defendant BOLOGNA's acts constituted an assault upon Plaintiff in that BOLOGNA intentionally attempted to injure Plaintiff or commit a battery upon her, and further that BOLOGNA's acts represented a grievous affront to Plaintiff.

72.    Defendant BOLOGNA's acts constituted a battery upon Plaintiff in that the above described bodily contact was intentional, unauthorized, and grossly offensive in nature.

73.    The actions of Defendant BOLOGNA were intentional, reckless, and unwarranted, and without any just cause or provocation, and Defendant BOLOGNA knew, or should have known, that his actions were without the consent of Plaintiff.

74.    The injuries sustained by Plaintiff were caused wholly and solely by reason of the conduct described, and Plaintiff did not contribute thereto.

75.    As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of her liberty, and was otherwise damaged and injured.

## SIXTH CLAIM:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## COMMON LAW CLAIM

76.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

---

July 5, 2005, *available at* http://thevillager.com/villager_113/afteryearsoftrouble.html.

77.    Defendant BOLOGNA's conduct, in discharging pepper spray into the face of Plaintiff at close range, without provocation or justification, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

78.    Defendant BOLOGNA's conduct, described above, was intended to and did cause severe emotional distress to Plaintiff.

79.    The conduct of Defendant BOLOGNA was the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

80.    As a result of the foregoing, Plaintiff was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

## SEVENTH CLAIM: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## COMMON LAW CLAIM

81.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

82.    Defendant BOLOGNA's conduct, in assaulting and battering Plaintiff, was careless and negligent as to the emotional health of Plaintiff, and caused severe emotional distress to Plaintiff.

83.    The acts and conduct of Defendant BOLOGNA was the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

84.    As a result of the foregoing, Plaintiff was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

## EIGTH CLAIM:  NEGLIGENCE

## COMMON LAW CLAIM

85.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

86.    Defendant BOLOGNA, while acting as agent and employee for Defendant CITY OF NEW YORK, in his capacity as a deputy inspector for the CITY OF NEW YORK, owed a duty to Plaintiff to perform his police duties without the use of excessive force.  Defendant BOLOGNA's use of force upon Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendant BOLOGNA or to others constitutes negligence for which Defendant BOLOGNA is individually liable.

87.    Defendant BOLOGNA's use of force upon Plaintiff when Defendant BOLOGNA had no lawful authority to arrest Plaintiff or to use force against Plaintiff constitutes negligence for which Defendant BOLOGNA is individually liable.

88.    As a proximate result of Defendant BOLOGNA's negligent use of excessive force, Plaintiff sustained physical and emotional pain and suffering, and was otherwise damaged and injured.

## NINTH CLAIM:  RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

## COMMON LAW CLAIM

89.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

90.    The conduct of Defendant BOLOGNA alleged herein occurred while he was on duty

19

and in uniform, in and during the course and scope of his duties and functions as a New York City police officer, and while he was acting as an agent, officer, servant and employee of Defendant CITY OF NEW YORK. As a result, Defendant CITY OF NEW YORK is liable to Plaintiff pursuant to the state common law doctrine of respondeat superior.

## TENTH CLAIM:  NEGLIGENT SUPERVISION, RETENTION AND TRAINING
### COMMON LAW CLAIM

91.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

92.    Defendant CITY OF NEW YORK negligently trained, retained, and supervised Defendant BOLOGNA.  The acts and conduct of Defendant BOLOGNA were the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

93.    As a result of the foregoing, Plaintiff was deprived of her liberty, was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the Defendants:

a.     Compensatory damages in the amount to be determined by a jury;

b.     Punitive damages in an amount to be determined by a jury;

c.     The convening and empanelling of a jury to consider the merits of the claims herein;

d.     Costs and interest and attorney's fees;

20

e.    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       September 23, 2012

                                        _____
                                        LEA SPIESS, Esq. [LS-7866]
                                        RONALD L. KUBY, Esq. [RK-1879]
                                        Law Office of Ronald L. Kuby
                                        119 West 23rd Street, Suite 900
                                        New York, New York  10011
                                        Email:  LSpiess@kubylaw.com
                                        (212) 529-0223 (t)
                                        (212) 529-0644 (f)

                                        Attorneys for Plaintiff